UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

TERESA MARIE WILLIAMS,

                Petitioner,

    v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
Administration,

                Respondent.

Case No. 1:17-CV-00062-CWD

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Currently pending before the Court for consideration is Teresa Marie Williams's

Petition for Review of the Respondent's denial of social security benefits, filed February

7, 2017. (Dkt. 1.) The Court has reviewed the Petition and the Answer, the parties'

memoranda, and the administrative record (AR), and for the reasons that follow, will

remand to the Commissioner with further instructions.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental

Security Income on June 11, 2015. This application was denied initially and on

reconsideration, and a hearing was held on May 25, 2016, before Administrative Law

Judge (ALJ) Stephen Marchioro.

After hearing testimony from Petitioner and vocational expert Cassie Mills, ALJ Marchioro issued a decision on July 22, 2016, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied her request on October 14, 2016. Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 54 years of age. She has an undergraduate degree in criminal justice from Boise State University. Petitioner's prior work experience includes full-time employment with the Army Reserve in human resources, and employment with the Ada County Juvenile Court as a probation officer. She was honorably discharged from the Army Reserve on October 16, 2013, due to a finding of permanent disability by the United States Department of Veterans Affairs (VA). (AR 334.) She claims she became disabled on January 22, 2014, and is applying for disability benefits from that date forward.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date of January 22, 2014. (AR 34.)

At step two, it must be determined whether the claimant suffers from a severe

impairment. The ALJ found Petitioner's diabetes mellitus, peripheral neuropathy, obesity, chronic kidney disease, thrombosis, degenerative joint disease of the bilateral shoulders, status-post multiple shoulder surgeries, degenerative joint disease of the right knee, status post multiple surgeries, and degenerative disc disease of the cervical and lumbar spine were all severe within the meaning of the Regulations. (AR 33); 20 CFR 404.1520(c). The ALJ determined that Petitioner's carpal tunnel syndrome, hyperlipidemia, and hypertension were not severe within the meaning of the Regulations, finding that the documented occurrence of the symptoms and impairments failed to meet the basic threshold for longevity and severity. *Id.*

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner did not have an impairment or a combination of impairments that met or equaled the criteria for the listed impairments, specifically considering listings 1.00, 1.00(B)(2)(c), 1.02, 1.04, 2.00, 4.00, 4.11, 5.00, 6.00, 6.02, 6.06, 8.00, 9.00(B)(5), 11.00, 12.00. (AR 34-35.) Petitioner does not challenge this finding.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work. When assessing Petitioner's RFC, the ALJ determines whether Petitioner's complaints about the intensity, persistence, and limiting effects of her pain are credible.

Here, the ALJ found Petitioner's complaints not entirely consistent with the

medical evidence and other evidence in the record. The ALJ found also that the disability rating from the VA was arrived at through different methodology than that used by the Social Security Administration and thus gave the rating little weight. After doing so, the ALJ determined Petitioner retained the RFC to perform light work, with limitations on all overhead lifting, restrictions against all climbing of ladders, ropes and scaffolds, and instructions to avoid exposure to excessive vibration, unprotected heights, and unguarded, moving mechanical parts. The ALJ found Petitioner was able to lift and carry 20 pounds occasionally, and 10 pounds frequently, and could stand or walk for up to six hours, and sit up for six hours during an eight-hour workday. The ALJ limited Petitioner to occasional balance activities, such as stooping, kneeling, crouching and crawling, as well as occasional climbing of ramps and stairs. He also found she could occasionally reach overhead bilaterally.

Although the ALJ found Petitioner had the residual functional capacity to perform her past work as a human resource manager, he also proceeded to step five. The Commissioner has the burden, at step five, to demonstrate that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's RFC, age, education, and work experience. Here, the ALJ found Petitioner retained the ability to perform the requirements of representative light work occupations such as a counter attendant, ticket taker, and silverware wrapper. Consequently, the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is generally instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports a petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner contends that the ALJ's decision to deny her benefits was not supported by substantial evidence and was based on the incorrect legal standard. Specifically,

Petitioner argues that the ALJ erred at step two when he determined Petitioner's carpal tunnel syndrome, hyperlipidemia, and hypertension were not severe. Petitioner asserts the ALJ further erred when he rejected the opinion of a treating provider and the VA disability assessment in favor of non-examining, non-treating agency consultants. Petitioner alleges also that the ALJ erred when he found that the Petitioner's allegations of pain and other symptoms were not consistent with the medical record. And finally, Petitioner argues the ALJ erred by assigning Petitioner an RFC that is not supported by substantial evidence because it did not adequately account for the cumulative effects of Petitioner's limitations. The Court will address each of Petitioner's arguments in turn.

1.      **Step Two – Severity**

At step two, a claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R, §§ 404.1509,404.1520(a)(4)(h). A severe impairment "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). *See also Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(a), (b). The ALJ found Petitioner's carpal tunnel syndrome, hyperlipidemia, and hypertension were non-severe impairments. However, as noted above, the ALJ found ten other impairments severe at step two. Petitioner argues the ALJ erred in determining her carpal tunnel syndrome, hyperlipidemia, and

hypertension are non-severe.

Here, the ALJ resolved step two in Petitioner's favor, finding other severe impairments and continuing with the sequential evaluation. Therefore, even accepting Petitioner's argument of error at step two, the error is harmless. *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *see also Gray v. Comm'r of Soc. Sec. Admin.*, 365 Fed. Appx. 60, 61 (9th Cir. 2010) (rejecting argument that the ALJ erred at step two by determining certain impairments were non-severe, because any alleged error was harmless since "the ALJ concluded that [claimant's] other medical problems were severe impairments"); *Mondragon v. Astrue*, 364 Fed.Appx. 346, 348 (9th Cir. 2010) ("Any alleged error at step two was harmless because step two was decided in [claimant]'s favor with regard to other ailments."). In sum, even if the ALJ erred in failing to identify carpal tunnel syndrome, hyperlipidemia, and hypertension as severe impairments, the error is harmless.[1]

## 2.    Veterans Affairs Disability Rating

Petitioner asserts that the ALJ failed to properly consider the VA determination of disability. An ALJ must typically give great weight to such determinations. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). However, the VA determination is not

---

[1] Petitioner alleges that the ALJ erred in evaluating the medical evidence of non-severe impairments when considering her RFC. The Court normally addresses such arguments when reviewing the sufficiency of an ALJ's RFC determination. *See* Soc. Sec. Ruling 96-8p (1996). ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). However, for reasons discussed more fully herein, the Court need not address this potential error in its review.

binding on the Social Security Administration (SSA), because the VA and SSA criteria for determining disability are not identical. *Id.* at 1076; *see also* 20 C.F.R. § 404.1504. The ALJ may give less weight to the VA determination if the ALJ identifies persuasive, specific, and valid reasons for doing so that are supported by the record. *McCartey*, 298 F.3d at 1076. For example, in *McCartey*, the petitioner had been found to be 80% disabled by the VA and the ALJ failed to consider, or even mention, that finding in his determination. *Id.* The Ninth Circuit reversed and remanded. *Id.* Therefore, in instances where an ALJ considers but ultimately rejects a VA disability rating, a court must decide whether the ALJ met the *McCartey* standard by providing persuasive, specific, and valid reasons supported by the record for rejecting the rating. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009).

In *Valentine*, the ALJ attempted to distinguish the VA's disability rating of 100% on the ground that the VA and SSA disability inquiries are different. *Id.* The court held the ALJ's analysis "fell afoul of *McCartey*" because his reasoning "explicitly relied on the marked similarity between [the disability programs of the VA and of the SSA]." *Id.* (quoting *McCartey*, 298 F. 3d at 1076). Ultimately, though, the court upheld the ALJ's rejection of the rating, specifying the rejection in that case was properly supported by the record because the VA rating rested on discredited evidence. Such is not the case in this matter.

In this case, Petitioner was found to be 100% disabled by the VA. (VA Letter of May 14, 2015, AR 220.) This finding was based on the combination of medical

impairments with corresponding assigned percentages: type II diabetes, 20%; diabetic

peripheral neuropathy, right lower extremity, 10%; diabetic peripheral neuropathy, lower

left extremity, 10%; chronic kidney disease, stage 3, 60%. (AR 198-201.) In making this

determination, the VA considered evidence that consisted of examination results from an

April 28, 2015 exam at the Boise VAMC; Service treatment records from 2015 and 2013;

a medical opinion dated May 8, 2013; personnel records from April 22, 2015; Petitioner's

VA Application for Disability dated January 12, 2015; and VA Form 21-0820, Report of

General Information, dated May 5, 2015. *Id.* at 204. Previously, in 2014, the VA found

that Petitioner was 80% disabled. (VA Letter of August 4, 2014, AR 214.)

     The ALJ explained he carefully considered Petitioner's VA disability rating but

gave it little weight because of the differences between the rules governing the VA's

determination and the regulations governing a determination by the SSA. (AR 38.)

Therefore, like the erring ALJ in *Valentine*, the ALJ in this matter improperly gave the

VA rating little weight, citing differences in the VA and SSA processes for determining

disability—clearly the reasoning rejected in *McCartey*.

     The ALJ in this case did not acknowledge that a VA rating is ordinarily entitled to

great weight. In addition, his decision fails to provide the Court with any analysis of the

VA rating that would indicate the ALJ gave it any consideration at all. "Although the

ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for

[the court] to meaningfully determine whether the ALJ's conclusions were supported by

substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015)

(quoting *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014)). Thus, "[w]ithout additional analysis, the Court cannot meaningfully review the ALJ's consideration of Plaintiff's disability rating." *Curbow v. Colvin*, No. CV-14-8222-PCT-ESW, 2016 WL 386221, at *4 (D. Ariz. Feb. 2, 2016).

Furthermore, the ALJ failed to specifically discuss the evidence that the VA had available for its review or to identify any new evidence that the VA may not have had when making its determination that would sufficiently support his decision to reject the rating. *See id*. For these reasons, the Court finds the ALJ failed to properly evaluate Petitioner's VA disability rating. On its own, this error warrants remand because it "negate[s] the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). However, because the Court has identified other significant errors in the ALJ's decision, it will discuss those errors below.

### 3.    Petitioner's Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id.* at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence

that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

When evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

In this case, the record establishes the existence of Petitioner's numerous impairments, which could produce the pain and limitations asserted by Petitioner. The ALJ did not find she was malingering; therefore, he was required to provide clear and convincing reasons to support his adverse credibility finding. The ALJ provided several reasons for discounting Petitioner's testimony: (1) her daily activities were inconsistent with her alleged limitations; and (2) the objective medical evidence did not support her alleged limitations. These reasons will be discussed in order below.

i.    *Petitioner's Daily Activities*

The ALJ found Petitioner's alleged limitations were inconsistent with the evidence of her daily activities, which he noted included walking her dogs, riding her stationary bike, walking to the gym and back home, traveling, and caring for her ailing mother. Petitioner challenges the ALJ's conclusions regarding her daily activities by arguing that, when the record is viewed as a whole, her activities do not support the conclusion that she can work at a sustained and gainful level. Respondent counters that there was a difference between what Petitioner testified to at the administrative hearing and what the treatment records indicate about her daily activities. (Dkt. 11 at 5.)

There are several instances in the treatment notes where Petitioner reported walking her dogs up to two miles or being able to walk her dogs twice a day for up to 30 minutes. (AR 448; 809; 1185; 1216; 1277.) However, the treatment notes mentioned Petitioner's feet burned because of her neuropathy during such walks, (AR 1185), and that Petitioner's activity was limited due to joint pain. For instance, notes from April 13,

2016, stated that Petitioner was "unfortunately unable to move well, she has had 3 prior arthroscopies on her right knee and shoulder." (AR 1297.) And further on in the same record, the notes state that "[s]he [was] not largely active related to her joint pain." (AR 1300.)

During the administrative hearing, Petitioner testified that her doctors recommended she walk to lose weight and to improve her circulation. (AR 89.) But she testified also that, although her goal was to walk the dogs twice a day, she was not regularly able to do so due to her pain levels. *Id.* at 78. The ALJ questioned Petitioner further about her use of a stationary bike and workouts at the gym. Petitioner explained that, when she first bought the bike she was exercising for up to 40 minutes a day, but that her knee pain and neuropathy prevented her from doing so on a regular basis. *Id.* at 78-79. Petitioner testified that using the bike put a strain on her lower back. *Id.* at 81. She explained that she had only gone to the gym a total of three times—not regularly as suggested by the ALJ's questioning. *Id.*

The ALJ's decision also placed significant weight upon Petitioner's travel activities. The evidence in the record relating to travel shows the following: In May of 2014, Petitioner took a two week trip to visit family and attend her grandson's kindergarten graduation. (AR 1039.) In late December of 2014, and early January of 2015, Petitioner took trips to California. *Id.* at 908; 922. In December of 2015, Petitioner left home for one week over the Christmas holiday. *Id.* at 1175. On April 10, 2015, she reported having to take a trip to New Mexico on short notice because of a family

emergency. *Id.* at 637. And, on August 27, 2015, Petitioner reported that her husband was taking her on a two week trip for her birthday. *Id.* at 795. There is also evidence that Petitioner enjoyed camping and went camping occasionally during the summer months. She testified to sitting by the fire on such trips. (AR 81.) In sum, the record contains evidence that Petitioner took six specific trips of various duration between May of 2014 and August of 2015.

Beyond considering Petitioner's attempts to exercise and her traveling activity, the ALJ did not consider the time and energy required by Petitioner to manage her many limitations. For instance, the record shows that, in addition to her regular checkup appointments, Petitioner visited a clinic up to three times a month if her blood clotting levels were sub-therapeutic, (AR 82), that she saw the nephrologist every three months for blood work, (AR 85), and that she had been referred to a pain clinic for her back pain. (AR 88.) She also had attended special dietary meetings necessary to manage both her diabetes and the effects of other treatments, such as her Coumadin regime necessary to manage her blood clot disorder. The record before the ALJ included a 15-page health summary of each outpatient encounter Petitioner had with the Boise VA between Petitioner's onset date of January 22, 2014, through September 1, 2015, when the report was printed. (AR 536-551.) This extensive list of clinic visits provides a stark portrait of the time and energy required of Petitioner to attempt to manage her limitations and treat their symptoms. The ALJ's decision contains no indication that he considered this evidence in his appraisal of Petitioner's daily activities and when making his adverse

credibility finding.

As such, the evidence of Petitioner's exercise and travel must be considered in light of the entire record, including evidence of the continuous treatment demands on Petitioner. For instance, Petitioner's attempts to exercise regularly did not negate the substantial evidence in the record that shows also such attempts were severely curtailed by her impairments. And, as for the travel, there is evidence in the record that when Petitioner traveled, she booked flights with short connections so she could get up and move while on the plane to prevent blood clots from forming; that when she traveled by car, her husband stopped every hour so she could walk; and that she had cancelled trips due to her blood clot disorder. Further, aside from attending her doctor's appointments or going grocery shopping, the record showed Petitioner's life is mainly sedentary—and even when traveling or camping, Petitioner spends a significant portion of her day sitting and watching television. Finally, Petitioner confirmed that she helped care for her ailing mother, but that such care was limited to accompanying her mother to doctor's appointments and similar actions. (AR 77.) She testified that her step-father was the primary care-giver. *Id.* There is no conflicting evidence in the record.

For the reasons identified above, the Court finds the ALJ failed to provide clear and convincing reasons to support his adverse credibility finding as it relates to Petitioner's daily activities.

ii.    *Objective Medical Evidence*

The ALJ found also that the objective medical evidence in the record did not

support Petitioner's allegations of disabling limitations. The Petitioner contends the ALJ erred by failing to consider all of Petitioner's severe impairments in his analysis, and for the impairments he did consider, by failing to completely review the record—thus basing his finding on an incomplete picture of the relevant facts. The Court agrees.

First, the ALJ concluded Petitioner's allegations related to the limitations caused by her musculoskeletal impairments were not supported by the objective medical evidence. (AR 36.) Specifically, the ALJ found the magnetic resonance imaging (MRI) of Petitioner's cervical spine showed only minimal degeneration, and no cervical spinal canal stenosis or neural foramina narrowing, and only moderate arthropathy. (AR 1387.) However, as Petitioner pointed out, the same record cited by the ALJ noted the presence of neural foraminal narrowing at C2–C3, C3–C4, C4–C5, and C5–C6. *Id.* The ALJ also based his decision on the fact that Petitioner had no recent x-rays or MRIs taken. ALJ concluded that this fact, in combination with the above medical evidence, suggested Petitioner's musculoskeletal impairments were chronic and degenerative and not traumatic or markedly disabling. (AR 36.)

However, beyond this basic observation, the ALJ failed to include any actual discussion of the limiting effects of Petitioner's other musculoskeletal impairments. Specifically, he failed to discuss the degenerative joint disease of the bilateral shoulders, status-post multiple shoulder surgeries, degenerative joint disease of the right knee, and status post multiple surgeries—all of which he previously found to be severe impairments. Without proper consideration of these impairments, which clearly relate to

Petitioner's musculoskeletal condition as a whole, the ALJ's finding is incomplete.

Second, as set forth above, there is objective medical evidence in the record that Petitioner has degenerative changes in her spine, including neural foraminal narrowing at four disk levels. (AR 1333.) In addition, the ALJ did not specify why chronic degenerative conditions are less disabling than traumatic impairments or why the absence of further tests negated the claimed disabling effects of Petitioner's ongoing musculoskeletal impairments. *Id.* "[E]ven if the ALJ had given facially legitimate reasons for his […] adverse credibility finding, the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006).

The Court finds the ALJ made similar errors throughout his inquiry into whether the objective medical evidence supported Petitioner's allegations regarding her limitations. For instance, when the ALJ reviewed the medical evidence regarding Petitioner's diabetes mellitus and diabetic peripheral neuropathy, he found that the treatments she was receiving, or has received for the conditions, had "generally been successful in treating [her] chronic underlying condition and salvaging her functionality such that she could perform a range of light activities and work within reasonable parameters." *Id.* However, the ALJ failed to explain how evidence of improvements in Petitioner's blood glucose levels equated specifically to his finding that Petitioner's statements regarding the impact of the limitations were not credible.

Although daily, self-administered insulin injections had improved Petitioner's

blood glucose levels, they had remained above her goal. (AR 1303.) Observations of such improvements must be "read in context of the overall diagnostic picture." *Holohan v. Massanari*, 246 F. 3d 1195, 1205 (9th Cir. 2001). In fact, later tests showed Petitioner's improvements plateaued, requiring an increase in the volume of her insulin injections. (AR 1308; 1314.) The treatment notes clearly indicated Petitioner's diabetes was uncontrolled and required frequent clinic visits to monitor her blood glucose levels, adjust her insulin treatment, and attempt further control through dietary restrictions. (*See e.g.* AR 1301; 1303; 1307; 1308.)

The ALJ made similar assumptions regarding the impact of treatment on the limiting effects of Petitioner's blood clot disorder, Factor V Leiden, (thrombosis/ hemostasis), and her chronic kidney disease. (AR 37.) He found the medical record indicated that the symptoms from these impairments were reasonably controlled through anti-coagulation therapy medication and dietary improvements. *Id.* Yet, Petitioner contends the treatment of Factor V Leiden and her kidney disease is intense, requiring bi-weekly blood draws and frequent changes to medication dosages and dietary restrictions. Indeed, monitoring lab reports and treatment notes showed the need for frequent monitoring and medication and dietary adjustments. (AR 819; 821; 859; 862; 892.) As is well-established, "[o]cassional symptom-free periods... are not inconsistent with disability." *Lester v. Chater*, 81, F.3d 821, 833 (9th Cir. 1995).

Finally, the ALJ discussed the potential limitations of the Petitioner's neuropathy, radiating burning pain, and turf toe. (AR 37.) He concluded that the medical records

concerning her foot examinations did not reflect the severity or restrictive symptomology described by Petitioner. *Id.* The objective medical evidence in the record showed Petitioner had symptoms attributable to diabetic peripheral neuropathy, including mild paresthesias and dysesthesias and mild numbness in the right and left lower extremities. (AR 562.) Yet, during a 2015 exam, Petitioner's strength and reflexes were normal as were the monofilament light touch testing and vibration testing results for each foot and the toes. *Id.* at 562-64. There was also no associated sciatic nerve paralysis at that time. *Id.* at 564. The ALJ relied on this report to support his conclusion that Petitioner's peripheral neuropathy was sensory and resulted in a normal exam finding. *Id.* at 565. However, a later report from April 29, 2016, showed the results of a diabetic monofilament sensory foot exam were abnormal and that Petitioner had decreased sensation throughout both her right and her left foot. *Id.* at 1285-86.

It is well-settled that an ALJ is not free to pick and choose which medical reports support his conclusion. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (an ALJ erred by selectively relying on some entries in a petitioner's records and ignoring others.) As in *Holohan*, the ALJ here erred by selectively relying on some entries in Petitioner's medical records while ignoring others. The ALJ looked at particular activities or particular limitations in isolation. This approach produced significant error in his evaluation regarding the total cumulative effect of Petitioner's ten severe and inter-related impairments. In sum, the Court finds the ALJ failed to provide clear and convincing reasons to support his adverse credibility finding in both his evaluation of the

record evidence of Petitioner's daily activities and the objective medical evidence available for his review.

**4. Treating Physician's Opinion**

On December 12, 2015, Dr. Theresa Weiland, Petitioner's treating physician, completed a Residual Functional Capacity Questionnaire. (AR 1113-15.) In that questionnaire, Dr. Weiland indicated that she sees Petitioner three to four times a year for clinic visits for Petitioner's chronic and progressive conditions. *Id*. at 1113. Dr. Weiland documented Petitioner's impairments, and associated symptoms of back pain, numbness, burning in feet, and hand numbness. *Id.* Dr. Weiland reported Petitioner could walk eight city blocks without rest or severe pain, that she would need to lie or recline for two to three hours out of an average eight-hour work day, that she could sit for 60 minutes at a time, and stand or walk for 60 minutes at a time. *Id*. Dr. Weiland reported that Petitioner's impairments were severe enough to frequently interfere with the attention and concentration required for simple, routine work activities. *Id*. at 1113. She reported also that "normal" work breaks would not suffice for Petitioner—instead she would need a break every 30 to 60 minutes throughout the work day for 15 minutes at a time. *Id*. at 1113-14. Notably, Dr. Weiland reported, based on her direct experience and objective findings, that Petitioner's impairments would result in her likely missing work more than four times a month—especially given that, in addition to her physical impairments, Petitioner suffers from insomnia and is often fatigued. *Id*. at 1114.

Petitioner alleges the ALJ erred when he rejected the opinion of Dr. Weiland in

favor of the opinions of non-treating, non-examining state agency reviewers, without

providing clear and convincing reasons for doing so. The Petitioner challenges also the

ALJ's decision to afford little weight to the opinion of her treating physician, in favor of

the opinion of an examining physician's one-time assessment of Petitioner's neuropathy,

without providing specific and legitimate reasons supported by the record. Respondent

argues that the conflicting opinion of the examining physician regarding the effect of

Petitioner's peripheral neuropathy was, in and of itself, a valid reason to reject the

treating physician's opinion.

The United States Court of Appeals for the Ninth Circuit distinguishes among the

opinions of three types of physicians: (1) those who treat the claimant (treating

physicians); (2) those who examine but do not treat the claimant (examining physicians);

and (3) those who neither examine nor treat the claimant (non-examining physicians).

*Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded

to the opinion of a treating source than to non-treating physicians. *Winans v. Bowen*, 853

F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by

another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v.*

*Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is

contradicted by another doctor, the Commissioner may not reject the treating physician's

opinion without providing "specific and legitimate reasons" supported by substantial

evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

In turn, an examining physician's opinion is entitled to greater weight than the opinion of

a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion of a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

Reports of treating physicians submitted relative to a petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and her inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is not contradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660

F.2d 722, 723 (9th Cir.1981)). Clear and convincing reasons must also be given to reject a treating doctor's ultimate conclusions concerning disability, especially when they are not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Here, the ALJ did not reject, but afforded little weight to, "the highly restrictive and disabling limitations noted" by Petitioner's treating physician, Dr. Weiland. He gave greater weight to non-treating, non-examining state agency reviewers and the one-time report of a non-treating examining physician. (AR 37.)

The ALJ noted that, "according to a treating physician, the peripheral neuropathy does not affect" Petitioner's ability to work. (AR 36-37.) This, however, constitutes evidence from an examining physician, not a treating physician.[2] If a treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. *Murray v*. Heckler, 722 F.2d 747, 751 (9th Cir. 1989).

The ALJ afforded the examining physician's opinion, recorded on April 28, 2015, by VA Dr. Natalie A. Domangue-Shiflett, (AR 553), significant weight as a real-time clinical assessment of Petitioner's RFC. The doctor's remarks indicate the Petitioner's "current peripheral neuropathy [was] purely sensory with no current motor involvement and therefore documentation of normal exam in section 5b severity." (AR 565.) However, as Petitioner points out, by April 2016, the condition had worsened. (Dkt. 10 at

---

[2] The examination was completed WHEN as a part of a Disability Benefits Questionnaire while Petitioner was still working for the military. (*See* AR 560.)

**MEMORANDUM DECISION AND ORDER - 24**

14 citing AR 1285.) Indeed, the result of a diabetic monofilament sensory foot exam conducted on April 29, 2016 was abnormal—including the comment that Petitioner '[h]as decreased sensation throughout whole foot bilaterally. Still able to feel monofilament." *Id.* at 1285-86. Therefore, the objective medical evidence shows Petitioner's diabetic peripheral neuropathy worsened from the time of the May 8, 2015 exam to the April 29, 2016 exam. Furthermore, Dr. Weiland's opinion regarding the impact of Petitioner's peripheral neuropathy was not made in isolation, like the finding made by Dr. Domangue-Shiflett —it was made while considering the totality of Petitioner's limitations. However, the ALJ must still afford the treating physician's opinion greater weight than that of the examining physician (*See Pitzer v. Sullivan*, 908 F.2d 1016, 1019 (9th Cir. 1990). As related above, the ALJ cited an examining physician's one-time assessment but failed to consider later evidence that Petitioner's peripheral neuropathy worsened—the ALJ did this in the face of the peripheral neuropathy diagnosis, Petitioner's testimony and ongoing reports of pain, and Dr. Weiland's opinion regarding the effect of peripheral neuropathy on Petitioner's ability to gainfully work. Thus, the Court finds the ALJ failed to provide specific and legitimate reasons supported by substantial evidence necessary to reject the opinion of a treating provider for that of an examining physician.

Further, as discussed above, the ALJ erred by failing to consider all of Petitioner's impairments and the combination of those impairments in his assessment of their cumulative effect on her ability to perform gainful work on a consistent basis. These

errors infected the remainder of the ALJ's analysis, including his decision to afford more weight to the opinions of the state agency reviewers and a non-treating examining physician than to Petitioner's treating physician.

## 5. **Residual Functional Capacity**

For the reasons stated above, the ALJ's determination regarding Petitioner's RFC was also in error. Due to the significant errors in his consideration of the VA disability rating, the Petitioner's testimony, the objective medical evidence, and the weight given to the opinion of Petitioner's treating physician, the questions the ALJ posited to the vocational expert at the hearing were incorrect. "The testimony of a [vocational expert] is valuable only to the extent that it is supported by medical evidence" and has "no evidentiary value if the assumptions in the hypothetical are not supported by the record." *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (citing *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir.1989). Thus, the vocational expert's opinions as to Petitioner's RFC—later adopted by the ALJ in his decision—were also incorrect.

## CONCLUSION

The ALJ's reasons for assigning the VA disability rating little weight, discounting Petitioner's credibility, and assigning little weight to the opinion of Petitioner's treating physician are not supported by substantial evidence in the record. These errors infected the ALJ's RFC assessment and his determination that Petitioner was able to perform past relevant work as a human resources manager or other light work. Petitioner argues that, because the ALJ's reasons for rejecting her claim were legally inadequate, there is no

purpose in remanding for further proceedings because, she argues, there are no outstanding issues to be determined. However, in its discretion, the Court finds that remand is appropriate to remedy the significant defects in the ALJ's decision and to develop the record more fully. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Therefore, the Court reverses the Appeals Council's decision and remands with instructions to the ALJ for further proceedings consistent with this opinion.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **REVERSED** and that the petition for review is **GRANTED**.

DATED: March 21, 2018

Candy W. Dale
U.S. Magistrate Judge